AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| United States of America<br>v.<br>Carl William MURDAUGH<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )  Case No.   2:22-mj-825 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  unknown but at least 2018 - 07/2019  in the county of   Charleston and elsewhere   in the
_____ District of    South Carolina   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 924(c) | Possession of a Firearm in furtherance of drug trafficking crime |
| 21 U.S.C. 841(a)(1), (b)(1)(A), (b)(1)(B) | Possession with Intent to Distribute Controlled Substance(s) |
| 21 U.S.C. 846 | Conspiracy to Possess with Intent to Distribute Controlled Substance(s) |

This criminal complaint is based on these facts:

Please see SA Brian Robinson's attached affidavit in support of arrest warranted.

☑ Continued on the attached sheet.

*Complainant's signature*

Brian E. Robinson, SA Homeland Security Investigatio
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 28 September 2022

*Judge's signature*

City and state:   Charleston, South Carolina        Molly H. Cherry, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

## INTRODUCTION

I, BRIAN ROBINSON, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, declare and state:

1.  I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Special Agent with U.S. Customs/HSI since February 2003 and am currently assigned to the Drug Enforcement Administration (DEA) Task Force in Charleston, South Carolina. Prior to my employment with HSI, I was employed as a law enforcement officer in Cobb County, Georgia, for over three years and was assigned to the Marietta/Cobb/Smyrna Narcotics Task Force (MCS Narcotics) for more than two years. While with MCS Narcotics, I conducted and/or participated in numerous drug and money laundering related investigations. Since being assigned to the HSI Charleston office, I have primarily conducted investigations involving the illegal importation and distribution of narcotics, and weapon and money laundering violations and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of recorded conversations, and have conducted or participated in investigations that included the interception of electronic communications. I have written and submitted to the Court numerous affidavits in support of arrest warrant, search warrants, pen registers, Title-III wire intercepts, and electronic

tracking device (ETD) warrants. I have served as the lead case agent during numerous wiretap investigations. I have received additional training in these investigations from the DEA, Internal Revenue Service (IRS), and other federal and state government agencies. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of drug proceeds, and the terminology and coded language used by drug traffickers.

3. I have personally participated in the investigation of the offenses described below. Except where otherwise noted, the information set forth in this Affidavit has been provided to me directly or indirectly by Special Agents of HSI and DEA and other law enforcement officers who have assisted in the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another special agent or law enforcement officer, to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are referenced in substance and in part, unless otherwise indicated. Similarly, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my personal observations but rather may also be observations provided directly or indirectly by, and/or through other Special Agents of HSI or DEA or other law enforcement officers who conducted such surveillance.

4. This Affidavit does not include all the facts known to me regarding this investigation, only those sufficient to establish probable cause that Carl William MURDAUGH has committed the following violations of federal law: possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and

possession with intent to distribute heroin and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), (b)(1)(B), and 846.

### PROBABLE CAUSE

5.  In July 2019, the DEA and HSI executed multiple arrest and search warrants as part of a coordinated arrest operation related to an organization in the Charleston, SC area receiving shipments of cocaine, fentanyl and marijuana. During the arrest of one of the defendants, investigators seized nearly 1 kilogram of fentanyl and gained the cooperation of the defendant (CD-1).[1] Investigators learned that CD-1 was actively negotiating the purchase of 1 kilogram of heroin arranged by CD-2.[2] CD-1 explained that he had met CD-2's[3] source for heroin during previous drug transactions, and identified MURDAUGH through a DMV photograph as the source of supply for CD-2. Law enforcement utilized CD-1 to conduct recorded telephone calls with CD-2, arranging for CD-2 and his supplier to deliver a kilogram of heroin to CD-1 in the Charleston, SC area.

6.  On July 26, 2019, CD-2 and MURDAUGH arrived in North Charleston, SC in a Chevrolet Tahoe operated by a third Cooperating Defendant (CD-3).[4] The Chevrolet

---

1 CD-1 has pled guilty to violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and 18 U.S.C. § 924(c) and is pending sentencing. CD-1 is cooperating in hopes of judicial consideration. CD-1 has a prior criminal history including Breach of Trust with Fraud Intent (2010) and Assault and Battery – 3rd (2014). While on supervision, the defendant was charged with Forgery, Less than $10,000 (2020), but the charges were dismissed.
2 CD-1 has also stated that he has delivered kilogram quantities of heroin/fentanyl, cocaine and marijuana to CD-2. The CD stated that MURDAUGH and another person received most of the drugs.
3 CD-2 pled guilty to violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and has been sentenced. CD-2 is cooperating in hopes of judicial consideration. CD-2 has a prior criminal history including Unlawful Possession of a Pistol by a Person Under 21 (1999), Possession of Less Than One Gram of Ice, Crank, Crack Cocaine – 1st Offense (1999), Possession of Less than One Gram of Ice, Crank, Crack Cocaine, - 1st Offense (2003), Simple Possession of Marijuana (2003), Possession of Less Than One Gram of Meth or Cocaine Base – 1st (2008), and MDP, Narcotics Drugs in Schedule Ib, c, LSD, and Schedule II Cocaine – 1st (2009). As of June 30, 2020, CD-2 also had pending charges including Receipt, Possession or Transport of Firearm by Convicted Felon or Felony First Offender (GA – 2019), two counts of Possession of Marijuana – Less than 1 Ounce (GA – 2019), Possession of a Schedule I Controlled Substance Ecstasy (GA-2019), Unlawful Carrying of a Pistol (GA – 2019), two counts Possession of a Firearm or Ammunition by Person (GA – 2019).
4 CD-3 was charged at the state and his charges were not adopted for federal prosecution. The state charges have since been dismissed.

Tahoe was registered through the South Carolina DMV to MURDAUGH's fiancé, Brittany Davis at 457 Ordell Ct in Walterboro, SC. At the direction of investigators, CD-1 instructed CD-2 to move across the street and MURDAUGH could be heard in the background of the recorded telephone call as CD-2 relayed the instructions.[5] When the Tahoe repositioned to the parking lot at 6185 Rivers Avenue in North Charleston, SC, investigators conducted a take down and encountered MURDAUGH sitting in the front passenger seat of the Tahoe. Sitting on the floor of the Tahoe, between MURDAUGH's legs was an "Infinger's Jewelry" bag that contained 1000g +/-1g of heroin. In the glove box directly in front of MURDAUGH was a loaded Glock 22C handgun and a cellular telephone. Investigators also located 2 additional cellular telephones that belonged to MURDAUGH as well as a payment receipt for Monster Self Storage located in Walterboro, SC.

7.   CD-3 stated that MURDAUGH had asked him to drive him to Northern Tool in North Charleston, SC due to MURDAUGH's license being suspended. CD-3 advised that on the way to Northern Tool, they drove to a residence in the Dorchester, SC area and picked up the rear passenger, later identified as CD-2. CD-3 stated that he did not know how the drugs were brought into the car but recognized the bag where the drugs were found. CD-3 advised that the bag belonged to MURDAUGH, and that approximately one month before, MURDAUGH purchased an engagement ring from Infinger Jewelry for MURDAUGH's girlfriend.[6]

8.   On the evening of July 26, 2019, the Honorable Bristow Marchant issued a search warrant for the storage unit listed on the receipt found in the Tahoe. Upon execution

---

[5] At the time, CD-2 was unaware of the investigation and was not cooperating.
[6] Investigators later obtained a copy of a receipt from Infinger's Jewery listing a lady's ring that was sold to "Will Murdaugh" of 457 Ordell Ct in Walterboro, SC on June 29, 2019. This is the same address listed on the South Carolina DMV registration of the Tahoe.

of the search warrant, investigators seized 855g +/-1g of heroin and 50 pouches containing marijuana.[7] The imprint on the nearly 1 kilogram of heroin located in the storage unit was the same imprint as that found on the 1 kilogram of heroin seized earlier in the day from between MURDAUGH's legs in the Tahoe. Also located in the storage unit was miscellaneous boxed merchandise as well as correspondence and online user account information related to MURDAUGH.

9. On August 1, 2019, CD-3 was interviewed and described the Tahoe as "Murdaugh's Tahoe," and relayed MURDAUGH would always have a gun with him in the Tahoe and would place the weapon in the glove compartment of the vehicle. CD-3 stated that the day of the arrest, CD-3 saw MURDAUGH place the Glock handgun in the glove compartment of the vehicle.

10. After MURDAUGH was arrested, the undersigned learned that MURDAUGH had been intercepted on a Title III wire intercept conducted by DEA Columbia in 2018 of a telephone used by a fourth Cooperating Defendant (CD-4).[8] During the court authorized interception, based on my training and experience, I believe MURDAUGH is discussing the purchase of a kilogram of heroin for an estimated $60 – 65,000.[9] Based on my training and experience, I believe that the recorded conversations

---

[7] The SLED lab results showed that 11 of the bags were tested and produced a total net weight of 4,931 +/- 3g of marijuana.

[8] CD-4 was prosecuted and convicted in a federal case out of Columbia, SC. He pled guilty to Conspiracy to PWID 500 grams or more of cocaine (lesser included offense). CD-4 is cooperating pursuant to his plea agreement in that prior federal case, and cooperating in hopes of judicial consideration. CD-4 has prior convictions including DUS 2nd (1994), Obstructing Law Enforcement Officer (1998), Criminal Domestic Violence (1998), Criminal Domestic Violence (2000), Obstruction of Justice (2008), Trafficking Ice, Crank or Crack (10 grams or more but less than 28 grams) (2010), and Simple Possession of Marijuana (2013).

[9] Based on the recorded call, the amount CD-1 and CD-2 negotiated to purchase 1 kilogram of heroin from MURDAUGH in July 2019 was approximately $66,000. On the intercepted call in the Columbia T-III investigation, the following conversation was intercepted:
MURDAUGH: yo
CD-4: you talking about that shit BMAC got
MURDAUGH: is it any good man?

from the T-III intercepts involving MURDAUGH also discussed the drugs that CD-2 was distributing contained fentanyl. During an interview in 2022, CD-4 corroborated the recorded telephone calls with MURDAUGH and provided investigators details of transactions involving the sale and purchase of marijuana, cocaine and heroin that CD-4 conducted with MURDAUGH in 2018.

11.   In 2022, DEA Charleston interviewed a fifth Cooperating Defendant (CD-5) who provided investigators details of transactions involving the sale of cocaine from CD-5[10] to MURDAUGH in 2018. CD-5 further described transactions involving the

---

CD-4: i don't know i aint fuck with it
MURDAUGH: they say it some gray shit I don't know bout I need somebody that knows that they be looking at before I fckn buy any
CD-4: i dont man I cant tell that number man
MURDUAH: huh?
CD-4 stated to MURDAUGH: i said that price he told me i mean it was alright he said he drop it down to like 60 or 65 for the whole thing
MURDAUGH: yeah thats what he was talking i mean thats kinda cheap man you know thats why im saying (they speak over each other)
CD-4: no it ain't. No it ain't Will. Cause it aint that shit your boy got, that ain't cheap. (unintelligible) that shit [nickname] and them got
MURDAUGH: so what you thinks better the one [nickname] and them got or the one hes got
CD-4: Hell yeah what i told you that shit [nickname] and them boy you can go to the moon see, them people Mac dealing with they aint the aint fuckin with that shit without fent in it. that shit [nickname] and them got go to the moon boy. You ain't never, listen you aint gone never get nothing as good as [nickname] and them got, I don't give a fuck what it is. (they speak over each other)
MURDAUGH: I called, I called him about it and he said look, he said man im gonna be honest, he's like, i seriously doubt they got anything better than what (they speak over each other)
CD-4: Naah. . . . cause you know why, what BMAC and them got is real ron aint no real ron gonna be able to compare to that shit [nickname] and them got cause it got that fent. You aint gonna be able to compete with it.(CD-4 stutters) Now I been calling some people too right, but them people done started getting hold of shit with the fent in it and they don't want to pay that number they getting with the shit cheaper than what BMAC charging now it might be good don't get me wrong it still might be good
MURDAUGH: But what I'm asking you is are you in town
CD-4: Huh, no I'm coming out of the country Ill be there in town in a minute
MURDAUGH: Well if i grab some of it and come over there to your house think you can get somebody to try it and we can find out
CD-4: Just get a sample and I'll meet you and i'll grab it and take it to my cousin
The above is an excerpt from an intercepted call. Based on my training and experience, I believe "fent" is slang for fentanyl, and "ron" is slang for heroin. Based on my knowledge of the investigation, I believe that "[nickname]," is the nickname for CD-2.
10 CD-5 has pled guilty to violations of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) in another federal case which is pending as well. CD-5 is cooperating in hopes of judicial consideration. CD-5 has a prior criminal history including Trafficking Cocaine (1991), Possession of Crack Cocaine (1995), Possession of Crack Cocaine (1996), Possession of Crack (1999), Possession of Marijuana (2006), Giving

purchase of heroin that CD-5 conducted from MURDAUGH in 2019, but complained about the quality. CD-5 also described that MURDAUGH was in possession of a handgun during these transactions.

12. On August 2, 2019, federal search warrants for the 3 cellular telephones seized from the Tahoe and believed to be used by MURDAUGH were authorized by United States Magistrate Judge Mary Gordon Baker in the District of South Carolina. However at the time of the execution of the search warrants, DEA Charleston did not possess the technology to access the 3 cellular telephones because the 3 devices were locked. On June 3, 2022, federal search warrants for the 3 cellular telephones were authorized by United States Magistrate Judge Mary Gordon Baker in the District of South Carolina and DEA was able to extract the data from all 3 devices. The cellular telephone located with the Glock handgun in the glove box directly in front of where MURDAUGH was sitting displayed a Google account for MURDAUGH and contained images of the miscellaneous boxed merchandise located in the storage unit as well as MURDAUGH's driver license. Text messages contained on the telephone also discussed the sale of marijuana and cocaine referencing "girl" and "straight off the block".[11] The cellular telephone found on the front passenger seat of the Tahoe where MURDAUGH was sitting was registered in the name "Carl Murdaugh" and contained text messages concerning the sale of marijuana as well as images of THC vape pens/cartridges with a handgun. Text messages on the device between MURDAUGH and Brittney Davis discussed the Tahoe as belonging to MURDAUGH and

---

False Information (2006), Possession with Intent to Distribute and Distribution of Cocaine Base (2007), Possession of a Firearm in Furtherance of Drug Trafficking Crime (2007), Possession of Counterfeit Currency (2007), and Simple Possession of Marijuana (2016).
11 Based on my training and experience I know that "girl" is common drug slang for cocaine and "the block" is referencing the shape/form that a kilogram is packaged.

further discuss Brittney Davis registering the Tahoe with the DMV in her name. Additional text messages from unknown subjects congratulate MURDAUGH on his engagement in early July 2019.

## CONCLUSION

13. Based on the forgoing, I submit there is probable cause to believe that William Carl MURDAUGH is in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), (b)(1)(B), and 18 U.S.C. § 924(c) in that he knowingly conspired to possess with the intent to distribute a controlled substance, that is one kilogram or more of heroin; possessed with intent to distribute a controlled substance, that is over 100 grams or more of heroin; and possessed a firearm in furtherance of a drug trafficking crime.

14. Based on the foregoing, I respectfully request this Court to issue a Criminal Complaint and Arrest Warrants for Carl William MURDAUGH.

Assistant United States Attorney Jamie Schoen has reviewed this Affidavit.

_____
Brian Robinson
Special Agent

SWORN TO AND SUBSCRIBED before me
this 28th day of September 2022.

_____
MOLLY CHERRY
UNITED STATES MAGISTRATE JUDGE